**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DANIEL HANDZEL, ) | |
| ) | CASE NO. 1:13-CV-01779 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Daniel Handzel ("Handzel") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On January 7, 2010, Handzel filed an application for POD, DIB, and SSI alleging a disability onset date of October 26, 2009. His application was denied both initially and upon

reconsideration.  Handzel timely requested an administrative hearing.

On October 20, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Handzel, represented by counsel, and an impartial vocational expert ("VE") testified.  On March 21, 2012, the ALJ found Handzel was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age 52 on his alleged onset date and age 54 at the time of his administrative hearing, Handzel was a "person closely approaching advanced age" at all relevant times under social security regulations.  *See* 20 C.F.R. §§ 404.1563(d) & 416.963(d).  (Tr. 22.)  Handzel has a high school education and past relevant work as a maintenance worker.  (Tr. 21.)

*Relevant Medical Evidence*[1]

On September 13, 2010, Handzel saw nurse practitioner Tina Oney, PCNS (hereinafter "NP Oney") for the first time.  (Tr. 506-507, 551-552, 716.)  Handzel's subjective complaints included depression and mania.  (Tr. 506.)  He stopped taking Seroquel of his own initiative, as he feared it was causing weight gain and made him tired.  *Id*.  He stated that he had been sober since 1992 and claimed "slowed thinking."  *Id*.  Objective mental status examination revealed the following: well groomed appearance and good hygiene; cooperative, calm, and appropriate behavior; orientation to time, person, and place; clear, normal, unpressured, and goal-directed

---

[1] As Handzel's sole assignment of error focuses on the ALJ's handling of the opinions of nurse practitioner Tina Oney, the Court's discussion of the medical evidence is confined to her treatment.

speech using appropriate language; logical, organized thought process; tight association; no abnormal or psychotic thoughts; good judgment and insight; good recent and remote memory as well as good recall; sustained attention span and concentration; an "okay" fund of knowledge; stable mood; and, a congruent mood that was appropriately reactive. *Id*. NP Oney indicated that "no changes" were made to Handzel's treatment plan. She diagnosed bipolar I disorder and ascribed a Global Assessment of Functioning ("GAF") score of 51-60 indicating moderate symptoms.[2] (Tr. 507.) A visit on October 26, 2010 appears to have yielded identical notes. (Tr. 585.)

On December 7, 2010, Handzel indicated that he needed his disability papers filled out. (Tr. 713.) His subjective report included no racing thoughts or depression. *Id*. He reported sleeping only 4-5 hours a night and mild slowed thinking. *Id*. NP Oney diagnosed Handzel with bipolar I disorder, and assessed his GAF score between 51 and 60. (Tr. 714.) After seeing Handzel on two prior occasions, NP Oney completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 716-723.) She indicated that Handzel was markedly impaired in the following areas: ability to understand and remember detailed instructions; ability to carry out

---

[2] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0 - 100, with lower numbers indicating more severe mental impairments. It bears noting that a recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Association, 5th ed., 2013). A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See DSM IV*, *supra*, at 34.

detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and, ability to complete a normal work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number or length of rest periods. (Tr. 719-720.) She opined Handzel was moderately or mildly limited in the remaining areas. *Id*. NP Okey indicated that her clinical findings that supported her opinion were the following: mood disturbance; blunt, flat or inappropriate affect; emotional lability; and, social withdrawal or isolation. (Tr. 717.) She indicated that Handzel's then current GAF score was 51-60, placing it in the moderate range. (Tr. 716.) She also reported that Handzel was capable of low stress work. (Tr. 722.)

On the same date, NP Oney's objective mental status examination of Handzel revealed the following: well groomed appearance and good hygiene; cooperative, calm, and appropriate behavior; orientation to time, person, and place; clear, normal, unpressured, and goal-directed speech using appropriate language; logical, organized thought process; tight association; no abnormal or psychotic thoughts; good judgment and insight; good recent and remote memory as well as good recall; sustained attention span and concentration; an "okay" fund of knowledge; stable mood; and, a congruent mood that was appropriately reactive. (Tr. 797.)

Subsequently, on April 8, 2011, a visit with NP Oney indicates no changes in the treatment plan, an unchanged diagnosis, and a GAF score between 51-60. (Tr. 771.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason

4

of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Handzel was insured on his alleged disability onset date, October 26, 2009 and remained insured through the date of the ALJ's decision, March 21, 2012. (Tr. 16.) Therefore, in order to be entitled to POD and DIB, Handzel must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

416.1201.

## IV. Summary of Commissioner's Decision

The ALJ found Handzel established medically determinable, severe impairments, due to seizure disorder, bipolar syndrome, and substance addiction disorder. (Tr. 16.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 17-18.) Handzel was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for the full range of work at all exertional levels with a number of non-exertional limitations. (Tr. 18-19, 21.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Handzel was not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists

6

in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.");

*McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

In his sole assignment of error, Handzel claims "the ALJ failed to properly evaluate the opinion of nurse practitioner Tina Oney." (ECF No. 16 at 14.) Handzel does not specify which portions of NP Oney's opinion he believes were improperly discounted. *Id*. at 14-15. The Court presumes that Handzel believes the ALJ should have adopted the marked limitations contained in the form completed in December of 2010. The Commissioner avers that the ALJ properly classified nurse practitioner Oney as an "other source" rather than a "treating source." (ECF No. 17 at 9.) Furthermore, the Commissioner asserts that the ALJ adequately explained her reasons for ascribing NP Oney's opinion little weight. *Id*. at 9-11.

The controlling weight provision of the regulations only applies to "medical opinions," and the opinions of chiropractors and nurse practitioners are not listed as one of the five types of "acceptable medical sources" but rather are designated as "other sources." *Compare* 20 C.F.R. § 404.1513(a) with 20 C.F.R. § 404.1513(d); *see also Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding the ALJ has the discretion to determine the appropriate weight to accord the opinion a non-medical "other source"). As such, the ALJ did not err by designating NP Oney as an "other source."

Nevertheless, while nurse practitioners are not "acceptable medical sources" under the regulations (and ALJs are therefore not required to give "good reasons" for rejecting their opinions under the treating physician rule), Social Security Ruling 06-03P, 2006 SSR LEXIS 5

notes that information from "other sources" such as nurse practitioners "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P, 2006 SSR LEXIS 5 at *5, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). Interpreting this SSR, the Sixth Circuit has found that opinions from "other sources" who have seen the claimant in their professional capacity "should be evaluated using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) ("Following SSR 06-03P, 2006 SSR LEXIS 5, the ALJ should have discussed the factors relating to his treatment of [nurse practitioner] Hasselle's assessment, so as to have provided some basis for why he was rejecting the opinion"); *see also McKitrick v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 150022, 2011 WL 6939330 at * 12-13 (N.D. Ohio Dec. 30, 2011); *Kerlin v. Astrue*, 2010 U.S. Dist. LEXIS 103014, 2010 WL 3937423 at * 7 (S.D. Ohio March 25, 2010).

The ALJ analyzed the opinion of NP Oney as follows:

> The undersigned gives little weight to the December 7, 2010 opinion submitted Tina Oney, APBN-BC (exh. 17F). Ms. Oney is not an acceptable medical source for rendering an opinion. In addition, Ms. Oney indicated that she had seen the claimant had completed three appointments when she rendered this opinion. The undersigned has considered Ms. Oney's observations and comments regarding the claimant's mental health functioning in light of the medical evidence of record as a whole. Ms. Oney concluded that the claimant generally has moderate limitations in performing mental functions. Ms. Oney's comments regarding the claimant having marked limitations in functioning is not consistent with the medical evidence of record. The undersigned concurs with Ms. Oney's observations that the claimant is capable of performing low stress work.

(Tr. 21.)

The ALJ adequately considered and explained some of the relevant factors found in 20

C.F.R. § 404.1527(c)(2). Notably, the ALJ discussed the rather limited treatment rendered by NP Oney – three visits prior to the date the opinion was rendered.[4] (Tr. 21.) The ALJ also discussed the supportability of NP Oney's opinion, and noted that it conflicted with her finding that Handzel had moderate limitations in social functioning. The ALJ also noted and agreed with NP Oney's opinion that Handzel could perform low stress work. *Id*. Finally, the ALJ addressed consistency and explained that NP Oney's opinion was not consistent with the record as a whole. *Id*. This Court cannot find that the ALJ failed in any duty she had to explain the weight ascribed to the opinion of an "other source." Handzel does not cite any applicable law or regulation requiring a more rigorous explanation.

Throughout his rather brief argument that the ALJ erred in the weight ascribed to NP Oney, Handzel also makes three passing references to Michael Bell, M.D., who appears to have treated Handzel while he was admitted to Windsor Laurelwood Center for Behavioral Medicine. (ECF No. 16 at 14-15.) The three statements are as follows: (1) "Dr. Bell [was] in the best position to give an opinion regarding Mr. Handzel's limitations;" (2) "[p]sychiatrist Dr. Bell also provided an opinion that Mr. Handzel was incapable of any type of work activity;" and, (3) the nurse practitioner's opinion was "congruent with the opinion of psychiatrist Dr. Bell." *Id*.

The Court declines to consider these unexplained and undeveloped references as a separate "argument." It is not the Court's function to comb through the entire record to develop a related argument on her behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

---

[4] The record actually demonstrates only two prior visits. While NP Oney indicates there were three prior visits, she appears to double count the visit of September 13, 2010. (Tr. 716.)

10

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

Furthermore, there is no readily apparent error stemming from the ALJ's consideration of Dr. Bell's opinion. Dr. Bell's treatment of Handzel appears to be limited to a two week time-span when Handzel was admitted to the Windsor Laurelwood Center for Behavioral Medicine between October 10, 2011 and October 25, 2011. (Tr. 782.) At the time of discharge, Dr. Bell assessed Handzel as having a GAF score of 65. A GAF score between 61-70 indicates "some ***mild symptoms*** (*e.g.* depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.* occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." *See DSM IV*, *supra*, at 34 (emphasis added). Notably, Handzel does not identify any post-discharge treatment by Dr. Bell. Nonetheless, on October 28, 2011, Dr. Bell checked a box on a form indicating that Handzell was "totally disabled," though no explanation was given as to why. (Tr. 792.) The ALJ ascribed "no weight" to this opinion, explaining it was inconsistent with Handzel's GAF score upon discharge, as well as Dr. Bell's opinion that Handzel had improved with treatment and medication. (Tr. 21.)

It is well settled that the question of whether a claimant is disabled is an issue expressly reserved for the Commissioner, and, therefore, an opinion that a claimant is disabled or cannot work does not constitute a "medical opinion." 20 C.F.R. § 404.1527(d). An ALJ need not give any weight to a conclusory statement of a treating physician that a claimant is disabled, and may

11

reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," as it is the Commissioner who must make the final decision on the ultimate issue of whether an individual is able to work. *See* 20 C.F.R. § 404.1527(d)(1); *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982). Dr. Bell's conclusion that Handzel was "totally disabled" is not a medical opinion and is not entitled to any special weight. The ALJ adequately explained his reasons for rejecting the opinion.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: June 11, 2014